UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-498-GWU

WILLIAM N. MARCUM,                                                              PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                  DEFENDANT.

### INTRODUCTION

William Marcum brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

        Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-498  William N. Marcum

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to

4

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

08-498  William N. Marcum

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Marcum, a 42-year-old former horse farm, factory, gas station and grocery store general laborer with a high school education, suffered from impairments related to chronic obstructive pulmonary disease, being status post amputation of the third and fourth fingers of the left hand at the metaphalangeal joints, degenerative disc disease of the cervical spine, a depressive disorder and anxiety. (Tr. 15, 19). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 17, 19). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Ralph Crystal included an exertional limitation to light level work restricted from a full range by

7

08-498  William N. Marcum

such non-exertional restrictions as (1) an inability to stand and walk for more than four hours a day in one-hour intervals; (2) an inability to sit for longer than six hours a day; (3) an inability to more than occasionally push/pull and use hand controls, handle or finger with the left upper extremity; (4) an inability to ever crawl and climb ladders, ropes or scaffolds; (5) an inability to more than occasionally stoop, kneel, crouch and climb ramps and stairs; (6) a need to avoid all exposure to dust, fumes, odors, or gases; (7) a need to avoid concentrated exposure to heat and humidity extremes; (8) a "mild" limitation of activities of daily living; (9) a "moderate" limitation in maintaining social functioning and maintaining concentration, persistence or pace; (10) a limitation to simple, repetitive tasks; and (11) a "fair to poor" ability to interact with co-workers or supervisors and to deal with work stresses.  (Tr. 472-473).  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Tr. 474-475).  The ALJ later asked about the effect of such mental restrictions as a "fair to poor" ability to deal with supervision, and a "poor" ability to meet deadlines, deal with work stresses, demonstrate reliability, and interact with co-workers and the public.  (Tr. 476-477).  The expert testified that the previously cited work could still be performed.  (Tr. 477).  Therefore, assuming that the vocational factors considered by Crystal fairly characterized Marcum's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

08-498 William N. Marcum

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no reversible error. Dr. Kathryn Jones, a treating source, recommended that Marcum would be limited in such activities as working on computers, bending over, sitting for long time periods and performing heavy cleaning. (Tr. 123). The hypothetical factors were essentially consistent with this opinion.

Dr. Douglas Tzanetos, an examining consultant, opined that Marcum would be limited to light level work, restricted from a full range by an inability to stand for more than four hours a day in two-hour installments and an inability to more than occasionally climb, balance, stoop, crouch, kneel or crawl. (Tr. 180-181). These restrictions were presented to Crystal with the exception of the limitation concerning balancing. Social Security Ruling 85-15 indicates that this would be a very serious omission. However, the Dictionary of Occupational Titles (D0T) notes that at least two of the jobs cited by Crystal, Inspector (DOT Number 589.387-010) and Weigher (DOT Number 221.587-030), would not require balancing. Thus, any error in omitting this restriction is harmless.

Dr. Carlos Hernandez (Tr. 203-211) and Dr. Timothy Gregg (Tr. 275-283) each reviewed the record and opined that Marcum would be limited to a limited range of medium level work, restricted from a full range by an inability to more than

occasionally stoop, crawl and climb ladders, ropes or scaffolds, and a limited ability to reach and handle.  The ALJ's findings were compatible with these opinions.

More severe physical restrictions than those found by the ALJ were not identified by such treating and examining sources of record as Dr. Philip Tibbs (Tr. 117-119), the staff at Central Baptist Hospital (Tr. 159-165), the staff at the HealthSouth Diagnostic Center of Lexington (Tr. 166-167), Dr. Steven Kiefer (Tr. 201-202), the staff at the Pain Care Center (Tr. 212-245), the staff at Winchester MRI (Tr. 284-286), the staff at the Rapha Ministries (Tr. 287-301), the staff at the Clark Regional Medical Center (Tr. 302-351), the staff at St. Joseph Healthcare (Tr. 352-361), and the staff at the Paragon Family Practice (Tr. 362-408).  Therefore, substantial evidence supports this portion of the administrative decision.

The ALJ also dealt properly with the evidence of record relating to Marcum's mental condition.  Psychologist Gary Stewart examined Marcum and diagnosed social phobias, a major depressive disorder, cannabis dependence in remission, and alcohol dependence in remission. (Tr. 413).  Stewart indicated that the plaintiff would have a "fair to poor" ability to respond to supervision and a "poor" ability to meet deadlines, deal with stress and change, demonstrate reliability and function socially.  (Tr. 414).  These factors were all considered by the vocational expert.[1]

---

[1] The ALJ ultimately rejected Stewart's opinion.  (Tr. 19).  However, since the psychologist's restrictions were considered by a vocational expert, any error is harmless.

08-498  William N. Marcum

The examiner also completed a Medical Source Statement of Ability to do Work-Related Activities Form.  Stewart noted "moderate" restrictions in interacting with the public and supervisors and a "marked" restriction in responding appropriately to usual work changes.  (Tr. 416).  These restrictions were also essentially consistent with those presented to the vocational expert.  Therefore, Stewart's report supports the administrative decision.

Psychologists Edward Stodola (Tr. 196-197) and Jane Brake (Tr. 270-271) each reviewed the record and opined that Marcum would be "moderately" limited in such areas as maintaining attention and concentration, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting.  The extensive mental restrictions of the hypothetical question were essentially consistent with these somewhat differently worded but not necessarily totally disabling limitations.  Even if this were not the case, the ALJ could reasonably rely upon the opinion of Stewart, an actual examining source, over that of non-examiners since the administrative regulations provide that "generally,

08-498 William N. Marcum

we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(d)(1).

Such treating and examining mental health sources as the staff at the Central Kentucky Behavioral Health Center (Tr. 154-158) and Psychologist Thomas Thornberry (Tr. 418-439) did not identify more severe mental restrictions than those found by the ALJ. Therefore, the administrative decision is also consistent with these reports.

Psychologist Marc Plavin, another examiner, did report the existence of more severe mental restrictions than were found by the ALJ. (Tr. 175). However, this opinion was offset by that of Stewart. Therefore, substantial evidence supports this portion of the administrative decision.

Marcum argues that the ALJ erred by failing to provide rationale for finding that his claims of disabling mental problems were not fully credible. However, the ALJ did cite Thornberry's report in which the claimant indicated that his depression had responded well to medication and his symptoms only affected him two or three times a month. (Tr. 19, 418). The ALJ noted a number of other reasons for the credibility determination, including the plaintiff's continued cigarette smoking habit despite complaints of breathing problems and Dr. Steven Kiefer's statement that his physical symptoms were in excess of his MRI scan findings. (Tr. 18-19, 202). Therefore, the court finds no error.

08-498  William N. Marcum

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of October, 2009.

Signed By:
*G. Wix Unthank*
United States Senior Judge